[Cite as *Reynolds v. Reynolds*, 2026-Ohio-309.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| CHAD REYNOLDS, | : | |
| Appellant, | : | CASE NO. CA2025-07-071 |
| vs. | : | OPINION AND JUDGMENT ENTRY 2/2/2026 |
| VANESSA REYNOLDS, | : | |
| Appellee. | : | |
| | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR2023 09 0680

Ched H. Peck, for appellant.

The Lampe Law Office, and Vicki L. Richmond, for appellee.

_____

# **O P I N I O N**

_____

**PIPER, P.J.**

{¶ 1} Appellant, Chad Reynolds ("Husband"), appeals from the final judgment and decree of divorce issued by the Butler County Court of Common Pleas, Domestic

Relations Division, granting him a divorce from appellee, Vanessa Reynolds ("Wife"). For the reasons set forth below, we affirm the domestic relations court's judgment.

**Facts and Procedural History**

{¶ 2} On February 22, 2005, Husband and Wife were married in Cincinnati, Ohio. They had three children: C.R., born on October 25, 2004; G.R., born on September 10, 2007; and K.R., born on May 27, 2011. Both Husband and Wife are in their mid-40s and are gainfully employed in the nursing/medical field. The record indicates that Husband earns approximately $70,000 to $80,000 per year, while Wife earns between $123,000 and $131,000 per year. The record also shows that in August 2023, after nearly 19 years of marriage, Husband and Wife separated.

{¶ 3} On September 27, 2023, Husband filed a complaint for divorce. The following month, on October 13, 2023, Wife filed an answer to Husband's complaint and a counterclaim for divorce. The matter ultimately proceeded to a two-day final divorce hearing that concluded on January 14, 2025. Given the parties' stipulations, upon conclusion of that hearing, the domestic relations court had only a few issues remaining to decide. One was Husband's request for spousal support. The other was the allocation of Husband's and Wife's parental rights and responsibilities regarding their two remaining unemancipated children, G.R. and K.R.

{¶ 4} On March 13, 2025, the domestic relations court issued a decision and order addressing the two issues set forth above. Specifically, regarding Husband's request for spousal support, the domestic relations court found that such an award was "neither appropriate nor reasonable" in this case. The domestic relations court reached this decision based on its finding the parties' ages, the duration of their marriage, their "nearly identical education and skill set," their income history, the manner in which their property

- 2 -

was being divided in the divorce, including any potential tax consequences, and the "expert testimony on earning capacity and the earning potential of the parties" were of "particular significance."

{¶ 5} Additionally, regarding Husband's and Wife's parental rights and responsibilities, the domestic relations court rejected Husband's proposed shared parenting plan. The court found that, while there "might be a hope for a shared parenting plan in the future," shared parenting was not in G.R.'s and K.R.'s best interests at this time. The court based this decision on its finding that Husband and Wife were presently unable to cooperate, communicate effectively, or make joint decisions regarding the children. The court determined that it was instead in G.R.'s and K.R.'s best interests to designate Wife as their residential parent and legal custodian. The court also determined that it was in G.R.'s and K.R.'s best interests to award Husband, as the non-residential parent, "liberal parenting time as agreed by the parties," or, if no agreement could be reached, the court's five-week rotating parenting-time schedule.

{¶ 6} On July 8, 2025, Husband filed a notice of appeal. Husband's appeal was submitted to this court for consideration on January 7, 2026. Husband's appeal is now properly before this court for decision. To support his appeal, Husband has raised three assignments of error for review.

**Husband's First Assignment of Error**

{¶ 7} THE TRIAL COURT ERRED IN DENYING PLAINTIFF-APPELLANT'S REQUEST FOR SPOUSAL SUPPORT.

{¶ 8} In his first assignment of error, Husband argues that the domestic relations court erred in denying his request for spousal support. We disagree.

{¶ 9} In divorce proceedings, after the domestic relations court determines the division or disbursement of property, it "may award 'reasonable spousal support' to either

- 3 -

party." *Carson v. Manubay*, 2023-Ohio-2015, ¶ 36 (12th Dist.), quoting R.C. 3105.18(B). "In determining whether spousal support is appropriate and reasonable, the [domestic relations] court has a statutory duty to base its spousal support order on a careful and full balancing of the factors in R.C. 3105.18(C)(1)." *Lykins v. Lykins*, 2018-Ohio-2144, ¶ 40 (12th Dist.). R.C. 3105.18(C)(1) sets forth several factors the domestic relations court must consider when determining whether spousal support is appropriate. *Casper v. Casper*, 2013-Ohio-4329, ¶ 40 (12th Dist.). These factors include, but are not limited to, "the income of the parties, the relative earning abilities of the parties, the retirement benefits of the parties, the ages and physical, mental, and emotional conditions of the parties, the duration of marriage, and the standard of living the parties established during the marriage." *Mann v. Muktarian*, 2025-Ohio-4404, ¶ 8 (12th Dist.), citing R.C. 3105.18(C)(1)(a)-(e) and (g). "A reviewing court will presume each factor was considered, absent evidence to the contrary." *Bobie v. Bobie*, 2023-Ohio-3293, ¶ 63 (12th Dist.).

{¶ 10} The domestic relations court has "broad discretion in determining whether to award spousal support, as well as the amount and duration of such award, based on the facts and circumstances of each case." *Spillane v. Spillane*, 2020-Ohio-5052, ¶ 12 (12th Dist.). Given this broad discretion, a domestic relations court's decision to grant or deny a party's request for spousal support "will not be disturbed on appeal absent an abuse of discretion." *Wessels v. Egan*, 2025-Ohio-1493, ¶ 14 (12th Dist.). The appellant's mere disagreement with the domestic relations court's decision is insufficient to demonstrate an abuse of discretion. *Konrad v. Konrad*, 2025-Ohio-5691, ¶ 28 (12th Dist.). The appellant must instead show that the domestic relations court acted unreasonably, arbitrarily, or unconscionably in rendering its decision. *Porter v. Porter*, 2024-Ohio-1413, ¶ 20 (12th Dist.). "An abuse of discretion is therefore found only in the rare instance when the decision is unsupported by the facts and is contrary to logic." *Hubbard v. Hubbard*,

2019-Ohio-3065, ¶ 6 (10th Dist.).

{¶ 11} As noted above, Husband argues that the domestic relations court erred in denying his request for spousal support. More specifically, Husband argues that it was an abuse of discretion for the domestic relations court to find that an award of spousal support was "neither appropriate nor reasonable" in this case. To support this claim, Husband argues that the domestic relations court failed to give due consideration to the fact that the standard of living he and Wife were able to achieve during their marriage was "directly tied to the parties' shared financial contributions." Husband also argues that the disparity between his and Wife's annual incomes, along with the duration of their nearly 19-year marriage, weighed heavily in his favor for a spousal support award. Therefore, by failing to "meaningfully weigh" these factors and by not taking into account "any" of the other statutory factors that it was required to consider under R.C. 3105.18(C)(1), Husband argues that the domestic relations court abused its discretion by denying his request for spousal support.

{¶ 12} However, upon review, the domestic relations court clearly considered each of the R.C. 3105.18(C)(1) factors in determining whether awarding Husband spousal support was appropriate and reasonable in this case. The court expressly stated that it had, in fact, found certain of those factors to be of "particular significance" in its decision to deny Husband's request for spousal support. Among those were Husband's and Wife's differing incomes—Wife earning significantly more annually than Husband—despite both having a "nearly identical education and skill set." Those factors also included the duration of Husband's and Wife's nearly 19-year marriage.

{¶ 13} Given Husband's arguments, Husband does not take any real issue with the domestic relations court's findings on any of the R.C. 3105.18(C)(1) factors. Husband simply disagrees with the weight the court ultimately afforded those factors in determining

- 5 -

whether to award him spousal support. We, as an appellate court, defer to the domestic relations court on such matters. This is because, as noted above, the domestic relations court has "broad discretion in determining whether to award spousal support, as well as the amount and duration of such award, based on the facts and circumstances of each case." *Spillane*, 2020-Ohio-5052, at ¶ 12. It is only when the domestic relations court abuses its discretion that this court intervenes. The domestic relations court did not abuse its discretion in denying Husband's request for spousal support in this case. Therefore, finding no merit in any of Husband's arguments raised herein, Husband's first assignment of error lacks merit and is overruled.

**Husband's Second Assignment of Error**

{¶ 14} THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION AS IT RELATES TO THE ISSUE OF CUSTODY.

{¶ 15} In his second assignment of error, Husband argues the domestic relations court erred in rejecting his proposed parenting plan and in designating Wife as the residential parent and legal custodian of their two unemancipated children, G.R. and K.R. We again disagree.

{¶ 16} Pursuant to R.C. 3109.04(A), in any divorce, the domestic relations court must "allocate the parental rights and responsibilities for the care of the minor children of the marriage" after hearing testimony from either or both parents. After hearing that testimony, the court generally allocates parental rights and responsibilities in one of two ways: "(1) by designating one party the residential parent and the legal custodian, and dividing between the parties the other rights and responsibilities for the care of the children, including child support and parenting time, or (2) by entering a shared-parenting order." *Insa v. Insa*, 2016-Ohio-7425, ¶ 33 (2d Dist.). However, regardless of which path the

domestic relations court ultimately chooses, the court's primary consideration in allocating parental rights and responsibilities remains the children's best interests. *Qaqa v. Cintron*, 2024-Ohio-2970, ¶ 53 (12th Dist.).

{¶ 17} To determine what is in the children's best interests, R.C. 3109.04(F)(1) requires the domestic relations court to consider "all relevant factors." These factors include, but are not limited to, the wishes of the children's parents regarding the children's care; the children's wishes and concerns, as expressed to the domestic relations court when the court has interviewed the children; the children's prior interactions and interrelationships with their parents; the children's adjustment to their home, school, and community; the mental and physical health of all persons involved in the situation; and the parent more likely to honor and facilitate court-approved parenting time rights. R.C. 3109.04(F)(1)(a)-(f). No single best-interest factor is determinative in the domestic relations court's decision. *Vaughn v. Vaughn*, 2022-Ohio-1805, ¶ 42 (12th Dist.). The domestic relations court's decision is instead based on the totality of the circumstances. *Id.*

{¶ 18} The domestic relations court must consider several additional factors when determining whether a party's proposed shared parenting plan is in the children's best interest. *Chaney v. Chaney*, 2022-Ohio-1442, ¶ 37 (12th Dist.). These factors are set forth in R.C. 3109.04(F)(2). They are the ability of the parents to cooperate and make joint decisions regarding the children; the ability of each parent to encourage the sharing of love, affection, and contact between the children and the other parent; any history or potential for abuse; the geographic proximity of the parents to one another; and, if applicable, the recommendation of the children's guardian ad litem. R.C. 3109.04(F)(2)(a)-(e). However, as before, none of these additional factors is determinative of what is in the children's best interest. *Cross v. Cross*, 2009-Ohio-1309, ¶ 9 (12th Dist.). Nevertheless,

while no single factor may be determinative, "effective communication and cooperation between the parties is paramount in successful shared parenting." *Seng v. Seng*, 2008-Ohio-6758, ¶ 21 (12th Dist.).

{¶ 19} The domestic relations court has broad discretion in allocating parental rights and responsibilities in divorce proceedings. *Woeste v. Woeste*, 2022-Ohio-2825, ¶ 53 (12th Dist.). Such discretion should be afforded the utmost respect given "the nature of the proceeding and the impact the court's determination has on the lives of the parties concerned." *Grover v. Dourson*, 2019-Ohio-2495, ¶ 15 (12th Dist.). Consequently, just as with spousal support matters, this court will not reverse a domestic relations court's decision allocating parental rights and responsibilities absent an abuse of discretion. *Suwareh v. Nwankwo*, 2020-Ohio-6899, ¶ 13 (12th Dist.).

{¶ 20} As noted above, to constitute an abuse of discretion, this court must find that the domestic relations court acted unreasonably, arbitrarily, or unconscionably in rendering its decision. *Porter*, 2024-Ohio-1413, at ¶ 20. Therefore, so long as there is competent and credible evidence in the record supporting the domestic relations court decision, the court's allocation of parental rights and responsibilities will generally stand. *Thompson v. Thompson*, 2023-Ohio-667, ¶ 14 (12th Dist.). This is because, as it is now well established, the domestic relations court has the best opportunity to assess each witness's demeanor, attitude, and credibility, matters that generally do not translate well to the written record. *Cross* at ¶ 9.

{¶ 21} Husband initially argues the domestic relations court erred in rejecting his proposed shared parenting plan because it failed to give "any" consideration to G.R.'s and K.R.'s wishes, as expressed to the court during their individual in-camera interviews, as required by R.C. 3109.04(F)(1)(b). However, upon review of the domestic relations court's decision, the court expressly stated that it considered all of the best-interest factors

outlined in both R.C. 3109.04(F)(1) and (F)(2) when making its decision to deny Husband's proposed shared parenting plan and designate Wife as G.R.'s and K.R.'s residential parent and legal custodian. This necessarily included the domestic relations court considering the wishes that G.R. and K.R. had expressed directly to the court during their respective in-camera interviews. Therefore, because the record plainly refutes Husband's claim, Husband's first argument lacks merit.

{¶ 22} Husband also argues that the domestic relations court erred in rejecting his proposed shared parenting plan because it failed to give the "appropriate weight" to two of the best interest factors set forth in R.C. 3109.04(F)(1), namely, the children's prior interactions and interrelationships with their parents under R.C. 3109.04(F)(1)(c), and the mental and physical health of all persons involved in the situation under R.C. 3109.04(F)(1)(e). However, just as Husband did when arguing in support of his first assignment of error, Husband does not present any meaningful challenge to the domestic relations court's findings with respect to either of those two factors. That is, Husband does not argue that the domestic relations court erred in its findings under either R.C. 3109.04(F)(1)(c) or (e).

{¶ 23} Rather, upon review, Husband simply disagrees with the weight the domestic relations court afforded to those two factors. The same is true regarding Husband's challenge to the domestic relations court's finding he and Wife were not presently able to cooperate, communicate effectively, or make joint decisions regarding their two unemancipated children, G.R. and K.R. Therefore, because the domestic relations court did not abuse its discretion in rejecting Husband's shared parenting plan and designating Wife as G.R.'s and K.R.'s residential parent and legal custodian, Husband's second argument is also without merit. Accordingly, finding no merit to either of the two arguments Husband raised herein, Husband's second assignment of error is

overruled.

**Husband's Third Assignment of Error**

{¶ 24} THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION AS IT RELATES TO THE PARENTING TIME ORDERED.

{¶ 25} In his third assignment of error, Husband argues the domestic relations court erred by failing to divide equally the time that he and Wife are able to spend with G.R. and K.R. We disagree.

{¶ 26} In divorce proceedings, if the domestic relations court does not issue a shared parenting decree, "it must issue a 'just and reasonable order or decree' that grants the non-residential parent parenting time with the children." *Schalk v. Schalk*, 2023-Ohio-4584, ¶ 21 (12th Dist.), quoting R.C. 3109.051(A). Pursuant to R.C. 3109.051(C), when establishing a specific parenting time schedule for the children's non-residential parent, the domestic relations court must consider all relevant factors, including, but not limited to, those outlined in R.C. 3109.051(D). Similar to the best-interest factors provided for in R.C. 3109.04(F)(1), those factors include the children's prior interaction and interrelationship with their parents; the children's and parents' available time, including each parent's employment schedule; the children's age; the children's wishes and concerns, as expressed to the domestic relations court, and the mental and physical health of all persons involved. R.C. 3109.051(D)(1), (3), (4), (6), and (9). "[A] domestic relation court's decision regarding parenting time will not be reversed absent an abuse of discretion." *Schalk v. Schalk*, 2023-Ohio-4584, ¶ 22 (12th Dist.).

{¶ 27} As noted above, Husband argues that the domestic relations court erred by failing to divide equally the time he and Wife are able to spend with G.R. and K.R. To support this claim, however, Husband simply reiterates the same basic arguments he

raised in his second assignment of error. Specifically, Husband contends that the domestic relations court either failed to consider certain of the R.C. 3109.051(D) factors or failed to give those factors "appropriate weight" when determining the amount of parenting time he would be entitled to if he and Wife were otherwise unable to agree. We find no merit to any of Husband's arguments.

{¶ 28} The domestic relations court considered each of the factors outlined in R.C. 3109.051(D) and fashioned a parenting time order for Husband that it deemed just and reasonable under the facts and circumstances of this case. Therefore, although Husband would have preferred that the domestic relations court divide the time that he and Wife are able to spend with G.R. and K.R. equally, the court's decision to award Husband with "liberal parenting time as agreed by the parties," or, if no agreement could be reached, the court's own five-week rotating parenting-time schedule, was not an abuse of discretion. It was, instead, a reasonable and well-thought-out decision that allowed the parties to demonstrate their ability to cooperate and make joint decisions regarding the children, while at the same time awarding Husband significant parenting time with the children if no agreement between the parties was reached. Accordingly, finding no merit to any of the arguments raised by Husband herein, Husband's third assignment of error is overruled.

## Conclusion

{¶ 29} For the reasons outlined above, and finding no merit to any of the three assignments of error raised by Husband herein, Husband's appeal from the domestic relations court's final judgment and divorce decree is denied.

{¶ 30} Judgment affirmed.

M. POWELL and SIEBERT, JJ., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas, Domestic Relations Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robin N. Piper, Presiding Judge

/s/ Mike Powell, Judge

/s/ Melena S. Siebert, Judge